## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **PRIMORIS ENERGY SERVICES** | § | |
| **CORPORATION,** | § | |
| | § | |
| **vs.** | § | **Civil No. 3:24-cv-00156** |
| | § | |
| **AIR PRODUCTS AND** | § | |
| **CHEMICALS, INC.** | § | |

### AIR PRODUCTS AND CHEMICALS, INC.'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND ORIGINAL COUNTERCLAIM

Defendant Air Products and Chemicals, Inc. ("APCI") hereby files this Amended[1] Answer, Affirmative Defenses, and Original Counterclaim to Plaintiff Primoris Energy Services Corp.'s ("Plaintiff" or "Primoris") Original Petition, and in support thereof, would show the Court as follows.

### AMENDED ANSWER TO PLAINTIFF'S PETITION

APCI denies each and every allegation not expressly admitted below. The adoption of Plaintiff's headings for organizational purposes does not reflect an admission of any kind. APCI's numbered responses set forth its admissions, denials, and statements regarding a lack of knowledge or information.

### I.    DISCOVERY CONTROL PLAN

1.    The allegations in Paragraph 1 do not require a response from APCI as they relate to state procedural matters inapplicable to this Court.

---

[1] Prior to removing this action to this Court, APCI filed its Original Answer in state court. *See* Doc. No. 1-4 (Ex. B-2 to Doc. No. 1, APCI's Notice of Removal).

## II.    PARTIES AND SERVICE

2.      APCI admits the allegations in Paragraph 2.

3.      APCI admits the allegations in Paragraph 3.

## III.    JURISDICTION AND VENUE

4.      APCI admits that this Court has subject matter jurisdiction over this action. The remaining allegations in Paragraph 4 do not require a response from APCI.

5.      APCI admits that this Court has personal jurisdiction over APCI and that it has contracted with Primoris, a resident of Texas for mechanical construction of portions of construction projects in Texas City, Texas.  APCI denies the remaining allegations in Paragraph 5.

6.      The allegations in Paragraph 6 do not require a response from APCI as they relate to state procedural matters inapplicable to this Court.

## IV.    FACTUAL BACKGROUND

7.      APCI admits that Primoris holds itself out as a mechanical contractor specializing in industrial construction, and that APCI received a bid from Primoris for certain mechanical scopes of work at the Projects as defined in Paragraph 65 below.  APCI denies the remaining allegations in Paragraph 7.

8.      APCI denies the allegations in Paragraph 8.

9.      APCI denies the allegations in Paragraph 9.

10.      APCI denies the allegations in Paragraph 10.

11.      APCI admits that beginning in 2021, it executed five contracts with Primoris for mechanical construction work on the Projects, the last of which was executed April 22,

2021.  To the extent the allegations in Paragraph 11 purport to characterize the contents of the written contracts, such contracts speak for themselves and APCI denies all allegations inconsistent therewith.  APCI denies the remaining allegations in Paragraph 11.

12.     To the extent the allegations in Paragraph 12 purport to characterize the contents of the written contracts, such contracts speak for themselves and APCI denies all allegations inconsistent therewith.  APCI denies the remaining allegations in Paragraph 12.

13.     APCI denies the allegations in Paragraph 13.

14.     APCI denies the allegations in Paragraph 14.

15.     APCI denies the allegations in Paragraph 15.

16.     APCI admits that the parties amended the contracts for Mech 1, Mech 2 and Mech 3 to adjust the schedules, incorporating new "rebaseline" schedules that Primoris prepared and proposed. Further, APCI admits these amendments (among other terms including a release in favor of APCI) increased Primoris's time for performance, and increased Primoris's lump sum contract price.  APCI denies the remaining allegations in Paragraph 16.

17.     APCI denies the allegations in Paragraph 17.

18.     APCI denies the allegations in Paragraph 18.

## V.     CAUSES OF ACTION

### Count 1 – Breach of Contract

19.     With respect to Paragraph 19, APCI repeats and incorporates herein by reference each and all of APCI's responses to each numbered Paragraph in Primoris's Petition as if fully set forth herein.

20.     APCI denies the allegations in Paragraph 20.

## Count 2 – Violation of Prompt Payment Act

21.     With respect to Paragraph 21, APCI repeats and incorporates herein by reference each and all of APCI's responses to each numbered Paragraph in Primoris's Petition as if fully set forth herein.

22.     APCI denies the allegations in Paragraph 22.

## Count 3 – Foreclosure of Lien

23.     With respect to Paragraph 23, APCI repeats and incorporates herein by reference each and all of APCI's responses to each numbered Paragraph in Primoris's Petition as if fully set forth herein.

24.     APCI denies the allegations in Paragraph 24.

## Count 4 – Fraudulent Inducement / String-Along Fraud

25.     This count is subject to APCI's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed contemporaneously with this Amended Answer, Affirmative Defenses, and Counterclaim.  Accordingly, no response to Paragraph 25 is required at this time.

26.     This count is subject to APCI's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed contemporaneously with this Amended Answer, Affirmative Defenses, and Counterclaim.  Accordingly, no response to Paragraph 26 is required at this time.

27.     This count is subject to APCI's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed contemporaneously with this Amended

Answer, Affirmative Defenses, and Counterclaim.  Accordingly, no response to Paragraph 27 is required at this time.

## Count 5 – Quantum Meruit

28.    This count is subject to APCI's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed contemporaneously with this Amended Answer, Affirmative Defenses, and Counterclaim.  Accordingly, no response to Paragraph 28 is required at this time.

29.    This count is subject to APCI's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed contemporaneously with this Amended Answer, Affirmative Defenses, and Counterclaim.  Accordingly, no response to Paragraph 29 is required at this time.

## Count 6 – Attorney's Fees

30.    With respect to Paragraph 30, APCI repeats and incorporates herein by reference each and all of APCI's responses to each numbered Paragraph in Primoris's Petition as if fully set forth herein.

31.    APCI denies that Primoris is entitled to an award of attorney's fees and costs under Chapter 53 of the Texas Property Code.

32.    APCI denies that Primoris is entitled to an award of attorney's fees and costs under Chapter 38 of the Texas Civil Practice and Remedies Code.

15412280v7

## VI.     CONDITIONS PRECEDENT

33.     With respect to Paragraph 33, APCI repeats and incorporates herein by reference each and all of APCI's responses to each numbered Paragraph in Primoris's Petition as if fully set forth herein.

34.     APCI specifically denies that all conditions precedent to Primoris's right of recovery have occurred or been fully performed and denies that Primoris is entitled to the relief requested herein.

## VII.     CONTROL GROUP

35.     The allegations in Paragraph 35 do not require a response from APCI.

## VIII.     REQUIRED DISCLOSURES

36.     The allegations in Paragraph 36 do not require a response from APCI, as they relate to state court procedural matters inapplicable to proceedings in this Court.

## IX.     PRIMORIS'S PRAYER FOR RELIEF

37.     APCI denies the allegations in Paragraph 37 (Primoris's Prayer for Relief) including the allegations in each and every subparagraph, and denies that Primoris is entitled to recover any such relief from APCI.

## X.     AFFIRMATIVE AND OTHER DEFENSES

38.     In addition to each of the above responses, by way of further answer and defense APCI asserts the following defenses with regard to the claims and causes of action in Primoris's Petition.

## **Failure to State a Claim**

39.     In addition to and without waiving the foregoing, Primoris fails to state claims upon which relief may granted.

## **Release and Waiver**

40.     In addition to and without waiving the foregoing, APCI asserts the affirmative defenses of release and waiver.  In connection the the Projects, Primoris executed multiple releases and waivers of claims in favor of APCI.  Primoris's releases and waivers bar Primoris's claims asserted in this lawsuit, in whole or in part.

41.     In Article I of the Construction Agreement included in the Contracts as defined in Paragraph 63 below, Primoris agreed that:

> [Primoris] is solely responsible for any actions and remedies necessary to fulfil these and other lump sum obligations to APCI and waives any entitlement and releases APCI from, any claims for schedule extension, direct or indirect cost, additional overhead and profit or any consequential damage, with the exception of post-site discoveries which could not have been evident with ground penetrating radar or from the information given to Contractor in the Agreement documents . . . ."

42.     In addition, Primoris again agreed to release certain claims against APCI as part of the amendments to the Mech 1, Mech 2, and Mech 3 Contracts.

> [t]his Amendment represents final adjustment for any and all amounts due or to become due to contractor for changes referred to herein.  Contractor further releases all other claims, if any (except those claims previously submitted in writing in strict accordance with the Contracts including any Subsequent Addendums), for additional compensation, including without limitation any rights Contractor may have for additional compensation arising out of delays or disruption of Contractor's schedule as may have arisen prior to the date of this settlement.[2]

---

[2] The above release is included in amendments to the Mech 2 and Mech 3 Contracts.  A substantially similar but not identical release is included in an amendment to the Mech 1 Contract.

43.     And Primoris again executed releases in favor of APCI in June 2023, releasing APCI from "claims, demands, and all liability, past, present and future of whatsoever kind or character arising out of or by reason of" the applicable Contract in connection with payments received from APCI on the Mech 1, Mech 1A, and Mech 2 Contracts.

## Payment

44.     In addition to and without waiving the foregoing, APCI asserts the affirmative defense of payment.

## Credit, Offset, and/or Setoff

45.     In addition to and without waiving the foregoing, APCI asserts that Primoris's claims are barred, in whole or in part, due to APCI's right to credit, offset, and/or setoff against any amount Primoris alleges it is owed.

## Prior Material Breach of Contract

46.     In addition to and without waiving the foregoing, as alleged further in APCI's Counterclaim, APCI asserts Primoris materially breached the Contracts prior to any alleged breach by APCI, thus excusing APCI's further performance.

## Claims Barred by Contract

47.     In addition to and without waiving the foregoing, APCI asserts that Primoris's claims are barred by the express terms of the Contracts, including but not limited to Articles 1, 3, 4 and 9 of the Construction Agreements, and Articles 3, 6, 10, 13, and 14 of the General Conditions to the Contracts.

## Quantum Meruit Barred by Written Contract

48.     In addition to and without waiving the foregoing, subject to and in the alternative to APCI's Motion to Dismiss filed contemporaneously with this Amended Answer, Affirmative Defenses, and Counterclaim, APCI asserts Primoris's quantum meruit claim is barred because Primoris's claims arise from the subject matter of express written agreements between the parties.

## Failure to Mitigate Damages

49.     In addition to and without waiver of the foregoing, APCI asserts Primoris failed to mitigate the damages alleged.

## No Entitlement for Delay/Impact Damages

50.     In addition to and without waiver of the foregoing, APCI asserts that Primoris is not entitled to recover for delay and/or impact damages by virtue of any mechanic's and materialman's lien under Chapter 53 of the Texas Property Code.  *See* TEX. PROP. CODE § 53.023.

## No Entitlement to Recover on Lien Claim

51.     In addition to and without waiver of the foregoing, APCI asserts that Primoris is not entitled to recover on its lien claim as a result of the limitation in TEX. PROP. CODE § 53.024.

## Lien Is Untimely, Fails Statutory Requirements

52.     In addition to and without waiver of the foregoing, APCI asserts that Primoris is not entitled to recover on its lien claim because the notice and lien did not comply with the statutory timeframes and other requirements of Chapter 53 of the Texas Property Code.

15412280v7

**<u>Good Faith Dispute Regarding Obligation to Pay (Prompt Payment Act)</u>**

53.     In addition to and without waiving the foregoing, APCI asserts that a good faith dispute exists between APCI and Primoris regarding APCI's obligation to pay Primoris the amounts in question.  *See* TEX. PROP. CODE § 28.003(b).

**<u>No Written Payment Request (Prompt Payment Act)</u>**

54.     In addition to and without waiving the foregoing, APCI asserts that Primoris is not entitled to relief under the Prompt Payment Act because Primoris has not provided any "written payment request from a contractor for an amount that is allowed to the contractor under the contract for properly performed work or suitably stored or specially fabricated material."  TEX. PROP. CODE § 28.002(a).

**<u>Prompt Payment Act Does Not Apply</u>**

55.     In addition to and without waiving the foregoing, APCI asserts that Primoris is not entitled to relief under the Prompt Payment Act because the Prompt Payment Act does not apply to the Contracts.  *See* TEX. PROP. CODE § 28.010.

**APCI'S ORIGINAL COUNTERCLAIM**

In further response to Primoris's Petition, APCI alleges as follows:

**I.      PARTIES**

56.     Defendant APCI is incorporated in the state of Delaware and has its principal place of business in the Commonwealth of Pennsylvania.

57.     Plaintiff Primoris is both incorporated and has its principal place of business in the State of Texas.

## II.    JURISDICTION AND VENUE

58.     This Court has jurisdiction over APCI's counterclaims under 28 U.S.C. § 1332.

59.     Venue is proper in the United States District Court for the Southern District of Texas, Galveston Division, pursuant to 28 U.S.C. §§ 82 and 1446 because it is the district and division within which this action was pending in state court when it was removed to this Court.

## III.    FACTUAL BACKGROUND

### A.    The Parties and the Projects

60.     APCI is a world-leading industrial gases company in operation for over 80 years, focused on serving energy, environmental and emerging markets.  APCI also develops, engineers, builds, owns, and operates some of the world's largest industrial gas and carbon capture projects, supplying world-scale clean hydrogen for global transportation, industrial markets, and the energy transition.

61.     Primoris is a mechanical contractor specializing in industrial projects and is based in Texas.

62.     APCI is in the process of developing a facility to produce hydrogen, nitrogen, and other industrial gases in Texas City, Texas.  As a part of this larger facility, APCI also contracted with Gulf Coast Ammonia LLC ("GCA"), a non-party to this lawsuit, for the engineering, procurement, and construction of an ammonia production facility in Texas City that is adjacent to APCI's Texas City facility (collectively, with APCI's facility the "Projects").

## B.     The Contracts

63.     To complete the Projects APCI contracted out different scopes of work, including with Primoris.  Between September 10, 2021 and April 22, 2022, APCI and Primoris executed four separate construction agreements for work on the Projects (collectively the "Contracts").[3]

64.     Each Contract is composed of the following documents:

   a.   a Construction Agreement containing the key commercial terms;

   b.   a set of General Conditions containing additional legal terms applicable to the respective Contract; and

   c.   various exhibits and attachments specific to each Contract.

65.     The Contracts were for four mechanical "packages" or scopes of work on the Projects (the work covered by the Contracts being collectively referred to as the "Work"):[4]

   a.   Mechanical Package 1 ("**Mech 1**") was for mechanical construction of the steam methane reformer[5] ("SMR") portion of the Projects;

   b.   Mechanical Package 1A ("**Mech 1A**") was for setting equipment for portions of the ammonia production facility;

   c.   Mechanical Package 2 ("**Mech 2**") was for mechanical construction of the balance of the hydrogen production plant portion of the Projects adjacent to the SMR and Mech 1; and

   d.   Mechanical Package 3 ("**Mech 3**") was for mechanical construction of the GCA ammonia production plant.  For this portion of the Projects, APCI was not the project owner, but was the engineering, procurement, and

---

[3] The Contracts generally contain the same legal terms, though the article numbering is sometimes different as some of the Contracts contain additional provisions.  In this Counterclaim, APCI will generally refer to the Contracts collectively, and only reference an individual Contract to the extent it differs.

[4] APCI and Primoris also entered a Construction Agreement for what the parties referred to Mechanical Package 6 in connection with the Projects.  As Primoris notes in its Petition, the "Mech 6" contract was completed, paid for by APCI, and is not subject to this dispute.

[5] A steam methane reformer uses high-temperature steam and natural gas to produce hydrogen.

construction contractor for GCA.  Thus, for the Mech 3 Contract, Primoris is a subcontractor.

66.     As multiple contractors and subcontractors (including Primoris) would be performing work on the Projects, the parties agreed that Primoris would "fully cooperate with APCI and/or such other contractors and subcontractors and carefully fit and coordinate its own work with the work of APCI and such other contractors and subcontractors . . . ."  *See* General Conditions to the Contracts, Article 8.

67.     Each Contract provided Primoris would be paid a "lump sum" price whereby Primoris agreed to be paid a fixed amount to perform the scope of work and agreed to bear the risk of delays and additional costs as set forth in Article I of the Construction Agreements to the Contracts:

> Pursuant to this lump sum pricing agreement, Contractor accepts responsibility for any and all cost related to schedule, labor, material and equipment items as described within this agreement and all scope of work documents referred to herein. . . . The Contractor shall be responsible for any and all escalation costs related to the agreed to Lump Sum pricing for the life of this contract agreement . . . .

68.     Consistent with the lump sum pricing structure, in Article I of the Construction Agreement included in the Contracts, Primoris agreed that:

> [Primoris] is solely responsible for any actions and remedies necessary to fulfil these and other lump sum obligations to APCI and waives any entitlement and releases APCI from, any claims for schedule extension, direct or indirect cost, additional overhead and profit or any consequential damage, with the exception of post-site discoveries which could not have been evident with ground penetrating radar or from the information given to Contractor in the Agreement documents . . . ."

69.     In the Contracts, Primoris made several warranties and guarantees with respect to the quality of the Work.

70.     In Article 6 of the General Conditions to the Contracts Primoris agreed that, "[e]xcept to the extent otherwise specifically provided in this Contract, all workmanship, material, equipment, and articles incorporated in the work covered by this Contract shall be in accordance with the specification and new and unused, of first-class quality and of the best grade of their respective kinds for the purposes intended."

71.     In Article 11 of the General Conditions to the Contracts, Primoris further agreed that it:

> expressly guarantees and warrants that all workmanship and material performed or furnished under this Contract will conform to the specifications, drawings, samples and other descriptions furnished or adopted by [Primoris] and with all applicable terms and requirements of this Contract, and [Primoris] agrees to and shall immediately upon demand of APCI or the Owner, and at the entire cost and expense of [Primoris], repair and/or replace in a manner satisfactory to APCI and the Owner, any and all work and/or material furnished by [Primoris] which may be or may have become defective due to faulty materials and/or workmanship and/or due to unsatisfactory functioning of plant, equipment or other material furnished hereunder, for which [Primoris] is at fault[.]

72.     The Contracts set deadlines between July 15, 2022 and December 20, 2022 for Primoris's Work to be completed.[6]

73.     In Article II of each Construction Agreement, the parties both agreed that time is of the essence for Primoris's obligations.

**C.      Early delays to the Work addressed by extended schedules and Contract amendments.**

74.     Primoris mobilized to the first of the Projects on or about September 2021.

---

[6] As will be addressed below, certain of the completion dates were extended by amendment, but Primoris did not meet those extended completion dates.

75.     Early on, there were some delays on the Mech 1 portion of the Projects relating to the delivery of materials and equipment.  These delays did not affect the other parts of Primoris's Work, and Primoris had areas of the Projects ready and available for it to execute the Work.  Later on, Primoris prepared and proposed revised "rebaseline" schedules for the Contracts to address these delays, which APCI accepted.  The parties memorialized these changes by amending the Mech 1, Mech 2, and the Mech 3 Contracts to extend the substantial completion dates and increase the lump sum contract prices.

76.     In the amendments to the Mech 1, Mech 2, and the Mech 3 contracts, Primoris agreed to release certain claims:

> [t]his Amendment represents final adjustment for any and all amounts due or to become due to contractor for changes referred to herein.  Contractor further releases all other claims, if any (except those claims previously submitted in writing in strict accordance with the Contracts including any Subsequent Addendums), for additional compensation, including without limitation any rights Contractor may have for additional compensation arising out of delays or disruption of Contractor's schedule as may have arisen prior to the date of this settlement.[7]

Primoris's claims asserted in this lawsuit are contrary to these amendments.

**D.     Primoris fails to timely complete the Work on all the Contracts due to its own delays, errors, and inefficiencies.**

77.     During the bidding phase and prior to awarding the Contracts, APCI expressed concern to Primoris regarding its ability to perform on multiple mechanical packages because of the volume of work required.  However, Primoris represented to APCI that it could manage the site better than anyone, and that awarding Primoris the four

---

[7] The above release is included in amendments to the Mech 2 and Mech 3 Contracts.  A substantially similar but not identical release is included in an amendment to the Mech 1 Contract.

mechanical packages would result in better efficiency and execution. But Primoris's actual performance proves that Primoris was not able to efficiently or effectively manage the Projects.

78.    Even with the additional time afforded by the extended "rebaselined" schedules in the amendments, Primoris was still unable to make timely progress or complete the Work on any of the Contracts before the relevant deadlines because of delays, inefficiencies, and issues for which Primoris is responsible.

79.    On any large construction project, changes in the scope of work are commonplace. These can arise from design changes, design drawing revisions, modifications necessary to address site conditions, value engineering, among other reasons. The changes in the work are typically addressed by parties through "change orders"—negotiated amendments to the construction contract to increase or decrease the scope, the contract price, or other terms.

80.    On the Projects, APCI asked Primoris to make certain changes to the Work, as well as some changes that were in addition to Primoris's original scope. When APCI did so, APCI asked Primoris to provide change order proposals with Primoris's proposed compensation and additional contract time required to perform the change order work.

81.    During the Projects, Primoris told APCI that it could handle both the additional agreed change order work and Primoris's base scope Work under the Contracts. Primoris said it had the manpower and resources necessary to complete the Work on schedule for the bid price. That turned out not to be the case. For each of the Contracts,

Primoris appeared unable to effectively manage its workforce and subcontractors to perform the Work.

82.     As the Projects progressed, Primoris was unable to supply sufficient skilled craft laborers for the Work.  For example, Primoris was unable to supply a sufficient number of welders, pipe fitters, and structural steel workers to meet its obligations under the Contracts.  Moreover, the workers that Primoris did provide generally lacked the skill and experience to effectively progress the Work.  Primoris appeared to attempt to use unskilled labor to ramp up its workforce where skilled labor was needed to progress the Work. Primoris was also unable to supply sufficient quality control personnel to manage the quality control process on the multiple mechanical packages.

83.     Primoris's lack of skilled workers delayed its progress and increased its costs to perform the Work.  For example, Primoris was unable to efficiently install certain heavy wall piping (nearly 3 inches thick) in the Mech 3 area because it was unable to cut the heavy wall pipe properly and align the pipes for proper welding.  As a result, Primoris spent an inordinate amount of time in this area reworking the piping, which in turn delayed Primoris's other Work.

84.     Primoris's inability to manage the Projects was also evident in the quality control process.  As part of the process of turning over systems to APCI under the Contracts, Primoris was required to submit "Test Packages" containing necessary and specified quality control documentation.  On industrial projects of this kind, errors in quality control can lead to major safety and environmental issues, and proper quality control documentation is critical to ensuring that the work has been properly performed.

However, APCI identified serious deficiencies in the quality control documentation on almost every Test Package that Primoris's quality control team provided, which required additional inspections and rework. Primoris's failures to provide adequate quality control documentation repeatedly delayed Primoris's other Work.

85.    Primoris's Work also suffered from significant turnover of supervision and craft labor on the Projects. Primoris cycled through multiple project managers, quality control managers, and superintendents for the different mechanical packages, and also experienced significant craft labor turnover. Primoris also shifted supervision between the Contracts. This reduced Primoris's efficiency by requiring the reassigned supervisors to learn a new portion of the Work for which they had less familiarity. The turnover in Primoris's personnel hampered Primoris's ability to effectively and timely perform the Work.

86.    Primoris's lack of productivity and sufficient skilled workers, along with its mismanagement of the Work, each contributed to overall delays on the Projects. Primoris failed to meet both its contractual deadlines as well as the dates it communicated in its schedule updates and proposed schedules.

87.    These delays by Primoris were most significant on the Mech 2 and Mech 3 Contracts. Primoris failed to complete Mech 2 by the amended completion date of December 30, 2022, and failed to complete Mech 3 by the amended completion date of February 12, 2023.

88.    By letter dated January 4, 2024, APCI gave written notice to Primoris that Primoris was liable for $750,000 in liquidated damages for delay on the Mech 2 Contract

and $1,000,000 in liquidated damages for delay on the Mech 3 Contract due to Primoris's failures to complete both Contracts timely and without excuse. APCI seeks those sums from Primoris in this lawsuit.

**E.      Primoris fails to complete all Work on the Mech 2 and Mech 3 Contracts.**

89.      Primoris ultimately completed the Mech 1 and Mech 1A Contracts and submitted final releases of claims to APCI and requested the release of retainage for those Contracts on June 28, 2023. APCI has made final payment and released the retainage on the Mech 1 and Mech 1A Contracts to Primoris. Yet, Primoris continues to assert claims against APCI relating to the Mech 1 and Mech 1A Contracts.

90.      For the Mech 2 Contract, in seeking release of the retainage, Primoris represented to APCI on or about June 28, 2023 that "the work on this installation/service purchase order has been completed in its entirety . . . ." That representation by Primoris turned out to be incorrect. APCI's subsequent inspections revealed that Primoris failed to complete numerous punchlist items for the steam generation turbine that was included in the Mech 2 scope. Without the steam turbine, the Projects could not operate as intended. When APCI requested Primoris complete this punchlist Work as required by the Mech 2 Contract, Primoris failed and refused to complete this Work on Mech 2. As a result, APCI has incurred significant costs to complete the punchlist Work on Mech 2 that Primoris refused to perform.

91.      Regarding the Mech 3 Contract, Primoris demobilized at the end of October 2023 even though Primoris had not completed its Work on the punchlist. APCI's

inspections on Mech 3 revealed approximately 500-600 punchlist items that were part of Primoris's base scope of Work that Primoris left unfinished when it demobilized.

92.     APCI incurred significant costs and damages as a result of Primoris's unfinished punchlist and other incomplete Work, including direct subcontractor costs and additional APCI supervision costs necessary to finish the Work.

93.     After Primoris demobilized, APCI began the commissioning process for the Projects. Commissioning consists of final tests, inspections, and completion of any outstanding work required to get the Projects ready for commercial operation and use. Previously, APCI had contracted with Primoris to provide mechanical construction commissioning support on a time and material basis as part of a commissioning contract separate from the Contracts.

94.     During the commissioning process, APCI discovered that significant portions of Primoris's base scope of Work under the Contracts remained incomplete, consisting of hundreds of punchlist items. Adding insult to injury, during commissioning Primoris submitted tickets to APCI on a time and material basis for completing punchlist items that were within Primoris's base scope of Work—Work for which Primoris was compensated under lump sum agreements. In other words, Primoris was trying to get paid twice for the same Work. APCI rightfully rejected these Primoris charges to the extent they included completion of base scope Work that was Primoris's responsibility under the Contracts in the first place.

**F.    APCI discovers defective Work during the commissioning process in the form of construction debris in the piping Primoris installed.**

95.    Under the Contracts, Primoris was required to maintain internal piping cleanliness per the applicable specifications and Primoris's own inspection test plan. During the final operational readiness inspections prior to startup of the Projects, APCI located extensive construction debris within the Mech 3 area in multiple locations where Primoris installed the piping and associated equipment.  The debris included pieces of wood 2x4s, wood chips, metal component identification tags, gravel, rocks, a grinding disc and other pieces of metal, and pounds of slag, rust, and grinding dust.

96.    When APCI discovered the construction debris in Primoris's piping installations, APCI promptly notified Primoris by sending a letter and non-conformance report, demanding Primoris take immediate action to correct the non-conforming Work. Primoris refused.

97.    Once industrial piping has been installed and welded together it is difficult to remove or check for debris inside.  To ensure the Mech 3 systems were safe to operate and met the Contract requirements, APCI had to cut sections of piping and send in robots to inspect the system, re-clean the pipes, re-install them, and re-test them.  APCI incurred substantial costs to complete remedial work that Primoris refused to perform, including direct subcontractor costs and additional APCI supervision costs.

**G.    APCI discovers additional damage to the Work caused by Primoris.**

98.    In addition to the construction debris, in February 2024, during an operational readiness inspection APCI discovered a large crack all the way through the 3-

inch-thick steel interior shell, and related damage to a large (nearly 60-foot tall) heat exchanger in the Mech 3 area that was part of Primoris's scope of Work.

99.     APCI learned that in the August 2023 hydrotest of the equipment Primoris failed to monitor and document the differential pressure between the inside shell and the outside shell of the heat exchanger while Primoris was de-pressurizing the heat exchanger. This was important because the drawings, specifications, and the equipment nameplate have a maximum design differential pressure of 285 psi that is permitted between the inside shell and the outside shell of the heat exchanger.

100.     Upon information and belief, the differential pressure between the inside and outside shell of the heat exchanger far exceeded the 285 psi maximum differential pressure while Primoris depressurized the heat exchanger, causing the inner shell to crack.  The crack meant the system would not hold pressure and could not function.

101.     APCI provided written notice to Primoris of this damage it had caused but Primoris refused to take action to rectify the damage it had caused.

102.     As a result, APCI was forced to incur substantial costs to correct the damage to the heat exchanger, including repair contractor costs and additional APCI supervision costs required to supervise this remedial work.

**H.     Primoris asserts claims late in the Projects, files a lien against APCI's leasehold interest in the Projects, and then files suit in state court.**

103.     In the late stages of the Projects, in approximately June 2023, Primoris presented APCI with a spreadsheet at a jobsite meeting showing approximately $20 million in costs that Primoris asserted were APCI's responsibility.  APCI asked Primoris to explain

how these costs were not already included in the original scope of Work modified by previously agreed change orders and for which APCI had in large part been paid. Primoris, however, was unable to explain how the claimed costs were not part of the lump sum or previously agreed change orders.

104. After Primoris demobilized from the Projects, Primoris sent a letter to APCI in November 2023 asserting an intent to lien the Projects for a sum exceeding $37 million. APCI responded to Primoris's letter: (i) denying Primoris's claim, (ii) notifying Primoris that APCI had paid Primoris in full on Mech 1, Mech 1A, and Mech 2; and (iii) notifying Primoris that all invoices from Primoris that were due had been paid and no outstanding invoiced amounts were due.

105. Primoris did not submit any additional invoices to APCI. Instead, on February 15, 2023, Primoris recorded an affidavit claiming a mechanic and materialman's lien in the amount of $23,746,765.09 against APCI's leasehold interest in the Projects.

106. On April 30, 2023, Primoris filed suit against APCI in the District Court of Galveston, County Texas. APCI timely removed Primoris's lawsuit to this Court on June 3, 2024.

107. To this day, Primoris has not invoiced APCI for the amounts claimed in its mechanic's lien claim or in this lawsuit. And such delayed invoices would be inappropriate and barred by the Contracts as Article 22(H) of the General Conditions to the Contracts requires Primoris "to submit all invoices no later than ninety (90) days following completion of work . . . ."

108.    APCI has paid Primoris all amounts that Primoris is due under the parties' Contracts and brings this counterclaim to recover the substantial damages Primoris caused APCI on the Projects.

## IV.    CAUSE OF ACTION

### Breach of Contract

109.    APCI repeats and re-alleges the allegations in Paragraphs 56-108 as if fully set forth herein.

110.    The Contracts are valid and enforceable contracts between APCI and Primoris.

111.    APCI performed, tendered performance, or was excused from performing its contractual obligations.

112.    Primoris materially breached the Contracts, including by:

    a.  Failing to prosecute the Work with the diligence required to ensure its progress and completion within the times provided in the Contracts, as amended;

    b.  Failing to comply with Articles 6 and 11 of the General Conditions to the Contracts by performing defective and deficient Work,

    c.  Failing to indemnify and hold APCI harmless from damage to property arising out of performance of the Contracts;

    d.  Failing to perform the Work to the satisfaction of APCI and/or GCA, and in accordance with the Contracts' specifications and requirements; and

    e.  As otherwise described above.

113.    Primoris's material breaches of contract have caused APCI to suffer actual damages in an amount within the jurisdictional limits of this Court.  At this time APCI estimates these damages to exceed $30 million.

114.    APCI is entitled to recover its actual damages in an amount to be proven at trial, plus all interest, costs, and attorneys' fees as allowed by law.

## V.    ATTORNEY'S FEES, AND COSTS

115.    APCI seeks an award of attorneys' fees and costs from Primoris pursuant to Chapters 28 and 53 of the Texas Property Code and as otherwise allowed by contract or at law.

## VI.    PRAYER FOR RELIEF

For these reasons, APCI prays that Primoris be denied the relief that it seeks, and that APCI have and recover judgment from Primoris for the following: (1) actual damages, (2) pre-judgment and post-judgment interest as permitted by law, (3) attorney's fees and costs, and (4) such other and further relief, both general and special, at law and at equity, to which APCI may show itself to be justly entitled or the Court deems appropriate.

15412280v7

Dated: June 10, 2024

Respectfully submitted,

**PORTER HEDGES LLP**

By:      /s/ *Amy K. Wolfshohl*
          Amy K. Wolfshohl (***Attorney-in-charge***)
          State Bar No. 24055880
          Federal Bar No. 808461
          Email: awolfshohl@porterhedges.com
          Cornelius M. Sweers
          State Bar No. 24102551
          Federal Bar No. 3283935
          Email: csweers@porterhedges.com
          1000 Main Street, 36th Floor
          Houston, Texas 77002
          (713) 226-6613 Telephone
          (713) 226-6213 Facsimile

**ATTORNEYS FOR DEFENDANT AIR PRODUCTS AND CHEMICALS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of this document was served on all counsel of record via this Court's electronic filing and notice system on June 10, 2024.

          */s/ Cornelius M. Sweers*
          Cornelius M. Sweers

15412280v7