1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION


PRIMORIS ENERGY          :
SERVICES CORPORATION     :
                         :
VS.                      :   C.A. NO. 3:24-cv-00156
                         :
AIR PRODUCTS AND         :
CHEMICALS, INC.          :

*************************************************

ORAL AND VIDEOTAPED DEPOSITION OF
JAY McCORMICK
CORPORATE REPRESENTATIVE OF
PRIMORIS ENERGY SERVICES CORPORATION

MARCH 19, 2026

*************************************************


        THE ORAL AND VIDEOTAPED DEPOSITION OF JAY

McCORMICK, produced as a witness at the instance of the

Defendant, and duly sworn, was taken in the

above-styled and numbered cause on the 19th day of

March, 2026, from 9:44 a.m. to 4:20 p.m., before Andrea

L. Desormeaux, CSR in and for the State of Texas,

reported by machine shorthand, at the offices of

Cokinos Young, 1221 Lamar Street, 16th Floor, Houston,

Texas pursuant to the Federal Rules of Civil Procedure

and the provisions stated on the record or attached

hereto.

EXHIBIT
6

analysis for the purposes of its delay claims, correct?

A.    Yes.

Q.    Primoris kind of has not conducted a separate critical path analysis on any contract, correct?

A.    We created the original critical paths for the schedule.  Not for the claims; that's Mr. Hoshino.

Q.    I'm going to have you turn to Air Products Exhibit 4.

THE WITNESS:  In the next five minutes or so can we take a break?  I know it's early.

MS. WOLFSHOHL:  I guess we'll do two documents.  Is that okay?

THE WITNESS:  Fair.

Q.    (By Ms. Wolfshohl)  I'm on Exhibit 4.  Can you see that's the Retention Release Request for Mech 1?

A.    I do.

Q.    Do you see the certification beneath the box, "I certify the work"?

A.    Yes.

Q.    You recognize that's Manny Rivera's signature?

A.    I'm going to take your word for that.

Q.    Well, as I understand it, he testified in a deposition he did -- he did sign it.

You're not aware of any inaccuracies in his certification, are you?

MS. NAPOLI-JANITENS:  Objection; form.

A.    I'm not.

Q.    (By Ms. Wolfshohl)  Let's flip over to Exhibit 5.  You can see that that's the Retention Release Request for Mech 1-A, correct?

A.    Yes.

Q.    You see that he has a certification and a signature there?  And I mean -- by "he," I'm referring to Manny Rivera.  Do you see that?

A.    I do.

Q.    You're not aware of any inaccuracies in Mr. Rivera's certification, are you?

MS. NAPOLI-JANITENS:  Objection; form.

A.    I am not.

Q.    (By Ms. Wolfshohl)  Flipping over to Exhibit 6.  Do you see that's the Retention Release Request for Mech 2?

A.    Yes.

Q.    And you see the certification where he certified the work was completed?

A.    Yes.

Q.    You're not aware of any inaccuracies in his certification, are you?

A.    I'm not.

MS. NAPOLI-JANITENS:  Objection; form.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

PRIMORIS ENERGY SERVICES   §
CORPORATION,   §
  §
  §
vs.   §     Civil No. 3:24-cv-00156
  §
  §
AIR PRODUCTS AND CHEMICALS,   §
INC.   §

**AIR PRODUCTS AND CHEMICALS, INC.'S
NOTICE OF DEPOSITION OF THE CORPORATE
REPRESENTATIVE OF PRIMORIS**

Pursuant to Federal Rule of Civil Procedure 30, counsel for Air Products and Chemicals, Inc. ("Air Products") will take the oral deposition of Primoris Energy Services Corp.'s ("Primoris") corporate representative on Thursday, March 19, 2026, beginning at 9:00 a.m. at Cokinos | Young, Four Houston Center, 1221 Lamar St., 16th Floor, Houston, Texas 77010. This deposition shall take place before an officer authorized to administer oaths and may be videotaped.

Primoris is requested, pursuant to Federal Rule of Civil Procedure 30(b)(6), to designate, a reasonable time before the deposition, the persons authorized to testify on Primoris's behalf concerning the matters listed in **Exhibit A**.

1

18141888v2



Dated: February 13, 2026

Respectfully submitted,

**PORTER HEDGES LLP**

By:   /s/ *Amy K. Wolfshohl*             
Amy K. Wolfshohl (***Attorney-in-charge***)
State Bar No. 24055880
Federal Bar No. 808461
Email: awolfshohl@porterhedges.com
Cornelius M. Sweers
State Bar No. 24102551
Federal Bar No. 3283935
Email: csweers@porterhedges.com
Lorena D. Valle
State Bar No. 24131729
Federal Bar No. 3804117
Email: lvalle@porterhedges.com
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 226-6613 Telephone
(713) 226-6213 Facsimile

**ATTORNEYS FOR AIR PRODUCTS AND CHEMICALS, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of this document was served on all counsel of record via e-mail on February 13, 2026.

/s/ *Lorena D. Valle*            
Lorena D. Valle

2

18141888v2

**EXHIBIT A**
**DEFINITIONS**

1.   "**Air Products**" means Air Products and Chemicals, Inc. and all employees, officers, agents, and departments.

2.   "**Answer**" means Primoris Energy Services Corporation's First Amended Answer and Affirmative Defenses filed in this Lawsuit on October 11, 2024.

3.   "**Complaint**" means the First Amended Complaint filed by Primoris Energy Services Corp. against Air Products in this Lawsuit on July 19, 2024.

4.   "**Counterclaim**" means the First Amended Counterclaim filed by Air Products against Primoris Energy Services Corp. in this Lawsuit on September 12, 2024.

5.   "**GCA**" means Gulf Coast Ammonia LLC and all of its respective employees, officers, agents, contractors, and departments.

6.   "**Lawsuit**" means Cause No. 3:24-cv-00156; *Primoris Energy Services Corporation v. Air Products and Chemicals, Inc.*; In the United States District Court for the Southern District of Texas, Galveston Division.

7.   "**Mech 1**" means the Mechanical Package 1 contract for mechanical construction of the steam methane reformer portion of the Air Products' Texas City Facility.

8.   "**Mech 1A**" means the Mechanical Package 1A contract for setting equipment for portions of the ammonia production facility.

9.   "**Mech 2**" means the Mechanical Package 2 contract for mechanical construction of the balance of the hydrogen production plant portion of the Air Products' Texas City Facility, adjacent to the steam methane reformer and Mech 1.

10.   "**Mech 3**" means the Mechanical Package 3 contract for mechanical construction of the GCA ammonia production plant.

11.   "**Mech**" or "**Mechs**" means Mechs 1, 1A, 2, and 3 collectively.

3

18141888v2

12. **"Primoris"** means Primoris Energy Services Corp., and its present or former affiliates, members, managers, owners, directors, officers, agents, employees, representatives, assigns, attorneys, predecessors-in-interest, successors, and all other individuals or entities, presently or previously, acting or purporting to act on behalf of Primoris.

13. **"And"** and **"or"** shall be construed both conjunctively and distinctively, and each shall include the other, wherever such dual construction will serve to bring additional information or documents within the scope of these requests.

14. **"Communication"** or **"communications"** means every manner or means of disclosure, transfer, or exchange of information, whether orally or by document, or whether face-to-face, by telephone, video conference, mail, facsimile, personal delivery, email, or otherwise.

15. **"Document"** or **"documents"** mean all written, typed, or printed matters, and all magnetic or other records or documentation of any kind or description (including, without limitation, facsimile transmissions or receipts, letters, correspondence, telegrams, memoranda, notes, records, minutes, contracts, agreements, checks, invoices, purchase orders or other financial records, records, inspection reports, forensic analyses or reports, or notations of telephone or personal conversations, conferences, inter-office communications, and electronic documents of any kind, microfilm, bulletins, circulars, pamphlets, photographs, videos, invoices, tape recordings, computer printouts and work sheets), including drafts and copies not identical to the originals, all photographs and graphic matters, however produced or reproduced, and all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature, in your actual possession, custody, or control, including those in the possession, custody, or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by the party to whom this request is directed. The term document specifically includes "electronically stored information" meaning information stored in an electronic or magnetic medium and retrievable in viewable form, including, but not limited to, the following: voice-mail messages and files; email messages and files; deleted files, programs, or emails; data files; program files; backup and archival tape; temporary files; system-history files; website information stored in textual, graphical, or audio format; website log files; cache files; cookies; text messages; internet postings; social media postings, comments, or communications; spreadsheets; PDFs; word processing files; and all metadata associated with any of the foregoing.

4

16. **"Including"** means including but not limited to.

17. **"Relating to"** or **"related to"** means consisting of, summarizing, describing, referring in any way to, constituting, evidencing, concerning, pertaining to, regarding, stating, embodying, supporting, memorializing, reflecting, or analyzing.

18. The singular of any word shall include the plural, and the plural shall include the singular.

19. The past tense shall be construed to include the present tense and vice versa to make the request inclusive rather than exclusive.

18141888v2

## TOPICS OF EXAMINATION

1. Primoris's live Complaint and Primoris's live Answer to Air Products' Counterclaim in this Lawsuit, along with Primoris's interrogatory responses in this Lawsuit.

2. Primoris's understanding of the contracts at issue in this Lawsuit, including attachments and any amendments.

3. Primoris's scope of work for Air Products in Mechs 1, 1A, 2, and 3, including any changes made to the scope.

4. Primoris's schedule for Mechs 1, 1A, 2, and 3, including any re-baselining or revisions of the schedule, and the reasons therefor.

5. Actions taken by Primoris to mitigate delays and damages related to its work on the Mechs.

6. Primoris's payment applications to Air Products for Mechs 1, 1A, 2, and 3.

7. Requests for Information issued by Primoris on the Mechs.

8. Primoris's alleged damages in the Lawsuit, including any supporting calculations prepared by Primoris.

9. The dates, method, and content of any contractual notices provided by Primoris to Air Products concerning each of its delay and productivity claims in the Lawsuit.

10. The periodic reports used or reviewed by Primoris's management and project team with respect to Mech progress, productivity, work completed versus uncompleted, welding, estimated and actual job costs and quantities, or other issues which are the subject of the claims in the Lawsuit.

11. Primoris's internal bid documentation, calculations, estimates, or budgets, and the assumptions and methods used to create its bids for Mechs 1, 1A, 2, and 3.

12. Primoris's progress on Mechs 1, 1A, 2, and 3 and reporting of the same, including, any quantity-tracking documentation, weld tracking information, test package tracking, and daily/weekly/monthly reports.

13. The date Primoris's work was finished on Mechs 1, 1A, 2, and 3 (each separate, not cumulative).

14. Primoris's understanding on whether it complied with Mech 3 Amendment 1.

6

18141888v2

15.  Identification and description of Primoris's remaining in-scope work on Mech 3 after May 9, 2023.

16.  Identification and description of any phase code Primoris used to track costs of in-scope work in Primoris's cost reports after May 9, 2023.

17.  For any phase code identified in the prior topic, the costs tracked in such codes (separate by phase code) on a monthly basis from May 9, 2023, until Primoris left Texas City and ceased work on the Mechs.

18.  The total diameter inches of welds on Mech 3 at the following time periods and how such amounts were derived:

   a.  Contract execution;
   b.  Amendment 1 for Mech 3;
   c.  May 9, 2023; and
   d.  December 31, 2023.

19.  The total diameter inches of welds on Mech 2 at the following time periods and how such amounts were derived:

   a.  Contract execution;
   b.  Amendment 1 for Mech 2; and
   c.  December 2023.

20.  With respect to the Topics 18 and 19, whether small bore pipe welds were included or excluded in the calculations.

21.  The evolution of Primoris's calculation of the diameter inches of welds on Mech 2 and Mech 3 including whether small bore pipe was included or excluded.

22.  Identification of the critical path for each Mech.

23.  The phase codes Primoris used in its cost reports for the remaining field welds which Primoris had not performed on Mech 3 as of May 9, 2023.

24.  The in-scope work and changed work captured by FCN 0196-1699-300 and 0196-1628-300.

7

18141888v2